# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

SABRINA L. TUCKER,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No.  1:13-cv-01212-SAB

ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL

Plaintiff Sabrina L. Tucker ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)  All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

Plaintiff applied for Social Security benefits due to impairments stemming from her back disorders, anxiety and depression.  For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is denied.

/ / /

/ / /

/ / /

/ / /

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on January 15, 2010.  (AR 151.)  Plaintiff's application was denied on June 14, 2010.  (AR 85.)  Plaintiff requested reconsideration of the denial on July 23, 2010.  (AR 93.)  Plaintiff's application was denied after reconsideration on September 1, 2010.  (AR 94.)  On November 2, 2010, Plaintiff requested a hearing.  (AR 100.)

On October 13, 2011, a hearing took place before Administrative Law Judge Philip Callis ("the ALJ").  (AR 41.)  On April 25, 2012, the ALJ issued a written decision and found that Plaintiff was not disabled.  (AR 12-27.)  The Appeals Council denied Plaintiff's request for review on June 2, 2013.  (AR. 1.)

### A.    Hearing Testimony

Plaintiff testified that she was 41 years old at the time of the hearing.  (AR 46.)  Plaintiff did not complete high school but was schooled until the 12th grade.  (AR 46.)  Plaintiff has not received a GED.  (AR 47.)  Plaintiff did complete a program at a technical college for medical assisting.  (AR 47.)

The last job Plaintiff held was with American Medical Response.  (AR 47.)  Plaintiff performed billing and data entry.  (AR 48.)  Plaintiff stopped working for them on April 4, 2009.  (AR 48.)  Plaintiff stopped working because she "had gone off on disability" and "had like a mental breakdown."  (AR 48.)  Plaintiff receives treatment as a result with Dr. Arabati.  (AR 48.)

Plaintiff lives in a duplex with her thirteen year old son and eleven year old daughter.  (AR 49.)  Plaintiff wakes up around 10:00 a.m. on "good mornings" and closer to noon on a "bad day."  (AR 49-50.)  Plaintiff can sometimes take care of her own bathing and personal needs, but sometimes will have severe muscle spasms which cause her to lie down and rest until someone can help her.  (AR 50.)  On good days, Plaintiff can get out of bed and fix herself something to eat.  (AR 50.)  Plaintiff cannot clean the house and relies on her children or her friends for those

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 10.)

1   chores.  (AR 50.)

2       Plaintiff leaves the house for doctor's appointments or counseling a couple times per

3   month.  (AR 51.)  On good days, she can drive herself but on bad days someone has to take her.

4   (AR 51.)  On weekends, Plaintiff usually visits her mom, who lives 20 minutes away.  (AR 51.)

5   Usually someone else takes her or her sister picks her up.  (AR 51.)

6       Plaintiff usually eats out with her kids for dinner, but sometimes makes things at home

7   and sometimes her son or daughter cooks.  (AR 52.)  Plaintiff usually sits or lays down at night

8   and watches television with her kids.  (AR 53.)

9       Plaintiff takes medication for her mental problems, which helps a little bit.  (AR 54.)

10  Plaintiff also sees a counselor.  (AR 54.)  Plaintiff discusses her problems handling any kind of

11  stress.  (AR 54.)  Plaintiff has trouble sleeping every night and only gets 4-5 hours of sleep per

12  night.  (AR 55.)  As a result, Plaintiff is fatigued throughout the day.  (AR 55.)  Plaintiff can

13  concentrate "[m]aybe 10 minutes" at a time.  (AR 56.)

14      Plaintiff takes a lot of pain medication for chronic pain in her neck and back.  (AR 57.)

15  Plaintiff's doctor talked about surgery for her back, but Plaintiff did not want surgery.  (AR 57.)

16  Plaintiff lies down around two times between 10:00 a.m. and 6:00 p.m. for about an hour or so.

17  (AR 57-58.)  Plaintiff cannot sit for longer than ten minutes without pain.  (AR 58.)

18      At the hearing, Plaintiff testified that she could sit for 10 to 15 minutes before she had to

19  get up.  (AR 59.)  Plaintiff's attorney noted that Plaintiff had been sitting in her chair for 20 to 30

20  minutes.   (AR 58.)   Plaintiff then said 20-25 minutes of sitting would make her really

21  uncomfortable.  (AR 59.)

22      Plaintiff has a prescribed cane and knee brace.  (AR 61.)

23  **B.       VE Testimony**

24      Stephen Schmidt testified at the hearing as a vocational expert ("the VE").  (AR 59.)  The

25  VE testified that Plaintiff's prior work could be classified as real estate clerk (sedentary, SVP 5),

26  medical assistant (light, SVP 6), and billing clerk (sedentary, SVP 4).  (AR 60.)

27  / / /

28  / / /

1   The ALJ provided the VE with the following hypothetical:

2   • limited to light work; and

3   • limited to simple, routine or repetitive tasks with limited public contact.

4   (AR 60.)  The VE testified that a person with such hypothetical limitations could not perform

5   Plaintiff's past work, but could perform other jobs such as a cleaner, electronics worker, or

6   packer.  (AR 60.)

7       The VE also testified that a hypothetical person who could not work eight hours per day

8   and forty hour per week is generally not considered employable under the relevant regulations.

9   (AR 60.)  Similarly, a hypothetical person who has three or more absences per month due to

10  illness or injury is not considered employable.  (AR 60.)  The VE also testified that someone

11  who used a cane for standing and walking could not perform Plaintiff's past work but could

12  possibly perform work at the sedentary level.  (AR 63.)

13      **C.     Medical Records**

14      The administrative record includes Plaintiff's medical records from Golden Valley Health

15  Center (AR 249-260, 327-351, 447-466, 585-605); medical records from Memorial Medical

16  Center (AR 261-298, 404-429); medical records from Modesto Advanced Diagnostic Imaging

17  Center (AR 299-305); medical records from Doctors Medical Center (AR 306-326, 526-534);

18  medical records from Modesto Pain Medicine (AR 352-369, 388-403, 467-494, 535-584); a

19  March 29, 2010 Psychiatric Review Technique from Dr. A. Garcia, M.D. (AR 370-380); a

20  March 29, 2010 Mental Residual Functional Capacity Assessment from Dr. A. Garcia, M.D. (AR

21  381-383); a March 29, 2010 Case Analysis from Dr. A. Garcia, M.D. (AR 384-387); a May 26,

22  2010 Physical Residual Functional Capacity Assessment from Dr. C. Fracchia, M.D. (AR 430-

23  434), medical records from Roseburg Chiropractic (AR 495-512), an August 17, 2010

24  Psychiatric Review Technique (AR 513-516); an August 31, 2010 Case Analysis from Dr. L.

25  Kiger, M.D. (AR 517-518); an August 30, 2011 questionnaire signed by Cesar Garcia and

26  Charles Edwards (AR 606-611), medical records from Health Analysis Inc. (AR 614-623);

27  medical records from MDSI Physician Group, which includes a Medical Source Statement from

28  Dr. Rita Gogna, M.D. (AR 624-638); and a Psychiatric Review Technique and Comprehensive

4

1  Psychological Evaluation from Dr. Robert L. Morgan, Ph.D (AR 649-661).

2     **D.     The ALJ's Findings**

3        The ALJ made the following findings of fact and conclusions of law in his April 25, 2012

4  written decision:

5  - Plaintiff meets the insured status requirements of the Social Security Act through

6     September 30, 2011;

7  - Plaintiff has not engaged in substantial gainful activity since April 4, 2009;

8  - Plaintiff has the following severe impairments: disorder of the back, anxiety, and

9     depression;

10 - Plaintiff does not have an impairment or combination of impairments that meets or

11    medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

12    Subpart P, Appendix 1;

13 - Plaintiff has the residual functional capacity to perform light work as defined in 20

14    C.F.R. 404.1567(b) and 416.967(b).  Plaintiff can sit, stand, or walk 6 hours during an 8-

15    hour workday, and lift or carry 20 pounds occasionally and 10 pounds frequently.

16    Plaintiff is limited to work involving simple routine repetitive tasks with limited public

17    contact.

18 - Plaintiff is unable to perform any past relevant work;

19 - Plaintiff was born on May 3, 1970 and was 38 years old, which is defined as a younger

20    individual age 18-49, on the alleged disability onset date;

21 - Plaintiff has a limited education and is able to communicate in English;

22 - Transferability of job skills is not material to the determination of disability because

23    using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is

24    "not disabled," whether or not Plaintiff has transferable job skills;

25 - Considering Plaintiff's age, education, work experience, and residual functional capacity,

26    there are jobs that exist in significant numbers in the national economy that Plaintiff can

27    perform; and

28 / / /

1    • Plaintiff has not been under a disability, as defined in the Social Security Act, from April

2       4, 2009, through the date of this decision.

3    (AR 18-27.)

4                                        **II.**

5    **LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY**
                                    **DETERMINATIONS**
6

7            An individual may obtain judicial review of any final decision of the Commissioner of

8    Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the

9    Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

10   disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

11   Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).    "Substantial evidence" means more than a

12   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

13   (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v.

15   Perales, 402 U.S. 389, 401 (1971)).   "[A] reviewing court must consider the entire record as a

16   whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill,

17   698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

18   However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

19   Court's judgment for the ALJ's.   See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

20   ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

21   conclusion that must be upheld.")

22                                       **III.**

23                           **DISCUSSION AND ANALYSIS**

24           Plaintiff argues that the ALJ erred by failing to discuss the opinion of Dr. Lalia

25   Akhbarati, M.D. and Martha Ruiz-Hayes MSW/ASW.  Further, Plaintiff argues that the ALJ

26   erred by giving little weight to the opinions of examining psychologist Dr. Robert Morgan, Ph.D.

27   Finally, Plaintiff argues that the ALJ erred by giving little weight to the opinions of Dr. Charles

28   Edwards, M.D.

                                          6

**A.   The ALJ Did Not Err in His Treatment of the Opinions of Dr. Lalia Akhbarati and Martha Ruiz-Hayes' Opinions**

Plaintiff contends that the ALJ erred in his treatment of the opinions of Dr. Lalia Akhbarati and Martha Ruiz-Hayes.  Plaintiff contends that these opinions were not addressed by the ALJ in his written opinion and that the ALJ erred in giving these opinions little weight. Plaintiff contends that both opinions should be regarded as opinions from treating physicians.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("...generally a treating physician's opinion carries the most weight of the various types of physician testimony.").  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing reasons.'" Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Treatment notes from a November 2, 2009 visit with Dr. Akhbarati indicate that Plaintiff came in due to trouble sleeping.  (AR 343.)  Plaintiff's mood was described as "sad" and her affect was described as "depressed."  (AR 344.)  Plaintiff was oriented, her insight was fair, her judgment and memory was intact, and her immediate recall, reversals and concentration were good.  (AR 344.)  Treatment notes from November 25, 2009 (AR 338-39), December 7, 2009 (AR 334-35), December 23, 2009 (AR 331-32), June 29, 2010 (AR 451-453), and July 27, 2010 (AR 448-450) describe similar findings of depression and anxiety, but normal orientation, insight, judgment, memory, concentration, etc.  The June 3, 2010 treatment notes indicate that

1  Plaintiff had "23- full panic attacks" within the ten days preceding the visit.  (AR 457.)  April 13,

2  2010 treatment notes describe back pain which worsened after a car accident the week before the

3  visit.  (AR 464.)  Plaintiff also reported having panic attacks 1-2 times a day since the car

4  accident and that she wakes up at night due to pain.  (AR 464.)

5       On August 17, 2010, Plaintiff was seen for insomnia by Martha Ruiz-Hayes.  (AR 604.)

6  Plaintiff reported that the difficulty sleeping "started insidiously and is unchanged."  (AR 604.)

7  "The problem started 10, years ago."  (AR 604.)  Plaintiff also complained of poor concentration,

8  irritability, crying spells and fatigue.  (AR 604.)  Plaintiff's functional impairment was described

9  as "moderate."  (AR 604.)  The record also includes similar follow-up treatment reports from

10  Ms. Ruiz-Hayes.  (AR 595-603.)

11       On May 23, 2011, Plaintiff was seen for an initial psychiatric evaluation.  (AR 589.)

12  Plaintiff reported persistent depression over the past 14 years since the birth of her first child.

13  (AR 589.)  Plaintiff reported "partial remission of depression, but persistent insomnia, panic

14  episodes and anxiety."  (AR 589.)  Plaintiff reported "intermittent nocturnal panic episodes and

15  occasional daytime panic episodes often related to being in closed spaces such as elevators."

16  (AR 589.)  On July 1, 2011, Plaintiff reported "having withdrawls from not having her cymbalta,

17  and having chest pain."  (AR 587.)  Treatment notes from August 30, 2011 indicate that

18  Plaintiff's "Functional Impairment" was "severe."  (AR 585.)  Plaintiff reported a history of

19  sexual abuse, a first husband who was "very violent with her," and that she had been separated

20  from her second husband for one month.  (AR 585.)

21       The record includes a report regarding Plaintiff's psychiatric symptoms, dated August 17,

22  2010.  Plaintiff identifies this report as provided by Dr. Lalia Akhbarati, M.D. and Martha Ruiz-

23  Hayes, MSW, ASW.  However, the signatures on this report are illegible.  The report states that

24  Plaintiff suffers from symptoms including anhedonia, appetite disturbance, sleep disturbance,

25  psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness,

26  difficulty concentrating or thinking, thoughts of suicide, delusions, hyperactivity, pressures of

27  speech, flight of ideas, decreased need for sleep, easy distractibility, involvement in activities

28  that have a high probability of painful consequences which are not recognized, and bipolar

syndrome.  (AR 513.)  The report also indicates that Plaintiff has marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.  (AR 514.)  The report states that Plaintiff suffered from three episodes of decompensation, each of extended duration.   (AR 514.)   The report further states that Plaintiff has marked limitations in:

- interacting with supervisors and co-workers,
- ability to understand, remember and carry out technical or complex job instructions,
- ability to understand, remember and carry-out simple one or two job instructions,
- ability to deal with the public,
- ability to maintain concentration and attention for at least two hour increments;
- ability to withstand the stress and pressures associated with an eight hour work day and day-to-day activity; and
- ability to handle funds.

(AR 515.)

As an initial matter, Plaintiff contends that the ALJ erred because the ALJ did not discuss the August 17, 2010 psychiatric report at all.  This is not the case, as the ALJ's written decision describes the August 17, 2010 report and gave little weight to it because "the claimant's self reported abilities are inconsistent with the limitations determined by the treating physician." (AR 24-25.)

Since the August 17, 2010 report is contradicted by the opinions of other physicians in the record, the ALJ must have provided "specific and legitimate" reasons supported by substantial evidence to reject the report.  The Court finds that the ALJ did cite specific and legitimate reasons supported by substantial evidence, and therefore did not err.

The ALJ noted that the severe limitations identified in the August 17, 2010 report were inconsistent with Plaintiff's reported daily activities.  The ALJ noted that Plaintiff reported that she lives independently, cares for her minor children, goes out shopping and to doctor's appointments, visits with family, socializes on Facebook, and helps her children with their homework.  Plaintiff's professed ability to care for herself and her minor children, without any

1   other adults in her household, is inconsistent with the limitations expressed in the August 17,

2   2010 report, which claims that Plaintiff is markedly impaired in activities of daily living, social

3   functioning, and concentration.  Accordingly, the Court finds that the ALJ did not err in giving

4   little weight to the opinions expressed in the August 17, 2010 report.

5        **B.**      **The ALJ Did Not Err in His Treatment of the Opinions of Robert Morgan,**

6               **Ph.D**

7       Plaintiff argues that the ALJ erred in giving little weight to the opinions of examining

8   psychologist Robert Morgan, Ph.D.  Dr. Morgan authored a Psychiatric Review Technique dated

9   December 15, 2011.  (AR 650-652.)  Dr. Morgan opined that Plaintiff suffers from anhedonia,

10  appetite disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness,

11  difficulty concentrating or thinking and thoughts of suicide.  (AR 651.)  Dr. Morgan also stated

12  that Plaintiff had marked restrictions in activities of daily living, maintaining social functioning,

13  and maintaining concentration, persistence or pace.  (AR 652.)  Dr. Morgan stated that Plaintiff

14  suffered from four or more episodes of decompensation, each of extended duration.  (AR 652.)

15  Dr. Morgan also authored a narrative report regarding Plaintiff's condition.  (AR 653-661.)

16      The ALJ gave little weight to Dr. Morgan's opinion because there was no supportive

17  evidence that the claimant had five episodes of emotional deterioration in work like situations.

18  The ALJ also noted that Dr. Morgan opined that Plaintiff had marked limitations in activities of

19  daily living, social functioning, etc., yet opined that Plaintiff would be capable of managing

20  funds in her own best interest should an award be made.  The ALJ also discounted Dr. Morgan's

21  opinion because it was not given in the context of seeking treatment but in the context of seeking

22  evidence for Plaintiff's appeal.

23      Plaintiff contends that the ALJ's finding that the record did not support the conclusion

24  that Plaintiff had five episodes of emotional deterioration in work-like situations was improper.

25  Plaintiff points to Dr. Morgan's narrative as well as the portions of the record identifying periods

26  of unemployment as supporting these findings.  However, Dr. Morgan's narrative fails to

27  identify what evidence Dr. Morgan relied upon in determining that Plaintiff suffered five

28  episodes of emotional deterioration.  The ALJ may reject Dr. Morgan's findings since they are

1   brief, conclusory and inadequately supported by clinical findings.  Thomas v. Barnhart, 278 F.3d

2   947, 957 (9th Cir. 2002).  Moreover, Dr. Morgan's findings are inconsistent with the findings of

3   the physicians on record, as Dr. Garcia and Dr. Edwards found that there was no evidence of any

4   episodes of decompensation.  (AR 378, 608)  Even Plaintiff's treating physician, Dr. Ackhbarati,

5   found that there was only evidence of three episodes of decompensation.  (AR 514.)  Given Dr.

6   Morgan's failure to identify any evidence support his finding of five episodes of emotional

7   deterioration, the ALJ did not err in discrediting Dr. Morgan's opinion.

8        Plaintiff contends that the ALJ erred by concluding that Dr. Morgan's opinion was

9   internally inconsistent, as Dr. Morgan concluded that Plaintiff was markedly impaired in her

10  ability to maintain normal daily activities yet at the same time could manage her own money

11  should she be awarded benefits.  Internal inconsistencies are a legitimate basis to reject an

12  opinion.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).

13  While a marked impairment in maintaining normal daily activities may not necessarily be

14  inconsistent with the ability to manage funds, Dr. Morgan's failure to support his conclusions

15  with findings that explain the distinction between the two highlights the brief, conclusory and

16  factually unsupported nature of his opinions, which is an independent basis to reject Dr.

17  Morgan's opinions.  See Thomas, 278 F.3d at 957.  Moreover, as the ALJ explained elsewhere in

18  his opinion, the conclusion that Plaintiff had marked impairments in activities of daily living is

19  inconsistent with her own reported daily activities, which included taking care of herself and her

20  minor children.

21       Plaintiff also contends that the ALJ discredited Dr. Morgan's opinion because it was not

22  a treating source and it was solicited for the purpose of supporting Plaintiff's application for

23  benefits.  Although the Ninth Circuit in Lester stated that "the purpose for which medical reports

24  are obtained does not provide a legitimate basis for rejecting them," Lester, 81 F.3d at 832, this

25  holding was later qualified by the Ninth Circuit: "[w]e clarify here that, in the absence of other

26  evidence to undermine the credibility of a medical report, the purpose for which the report was

27  obtained does not provide a legitimate basis for rejecting it."  Reddick v. Chater, 157 F.3d 715,

28  726 (9th Cir. 1998).  As discussed herein, the Court finds that the ALJ's analysis of Dr.

1  Morgan's opinion was proper in light of other evidence undermining Dr. Morgan's opinion.

2       Based upon the foregoing, the Court finds that the ALJ did not err in giving little weight

3  to Dr. Morgan's opinions.

4       **C.    The ALJ Did Not Err in His Treatment of the Opinions of Dr. Charles**
        **Edwards, M.D.**
5

6       Plaintiff contends that the ALJ erred in giving little weight to the opinion of Dr. Charles

7  Edwards, M.D.  Dr. Edwards authored a psychiatric report dated August 30, 2011.  (AR 606-

8  610.)  Dr. Edwards opined that Plaintiff suffered from symptoms such as anhedonia, appetite

9  disturbance, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty

10 concentrating or thinking, thoughts of suicide, pressures of speech, flight of ideas, decreased

11 need for sleep, and easy distractibility.  (AR 606.)  Dr. Edwards opined that Plaintiff suffered

12 from moderate limitations in activities of daily living, maintaining social functioning and marked

13 limitations in maintaining concentration, persistence or pace.  (AR 608.)  Dr. Edwards further

14 opined that Plaintiff suffered from:

15      • mild limitations in her ability to relate and interact with supervisors and co-workers;

16      • marked limitations in her ability to understand, remember and carry out an extensive

17        variety of technical and/or complex job instructions;

18      • marked limitations in her ability to understand, remember and carry out simple one or

19        two job instructions;

20      • moderate to marked limitations in her ability to deal with the public;

21      • marked limitations in her ability to maintain concentration and attention for at least two

22        hour increments;

23      • extreme limitations in her ability to withstand the stress and pressures associated with an

24        eight-hour work day and day-to-day work activity; and

25      • no limitation in her ability to handle funds.

26 (AR 610.)

27      The ALJ gave little weight to Dr. Edwards' opinions because they were inconsistent with

28 Plaintiff's reported daily activities.  In particular, Dr. Edwards' opinion that Plaintiff suffered

                                        12

1  from marked limitations in her ability to understand, remember and carry out simple instructions

2  was inconsistent with Plaintiff's reported daily activities which involved caring for her minor

3  children largely on her own and helping them with their school work.

4        Based upon the foregoing, the Court finds that the ALJ did not err in giving little weight

5  to Dr. Edwards' opinions.

6  **IV.**

7  **CONCLUSION AND ORDER**

8        Based upon the foregoing, the Court finds that the ALJ's analysis was proper and the

9  ALJ's conclusions were supported by substantial evidence.   Accordingly, it is HEREBY

10  ORDERED that Plaintiff's appeal from the administrative decision of the Commissioner is

11  DENIED and JUDGMENT is entered in favor of Defendant Commissioner of Social Security

12  and against Plaintiff Sabrina L. Tucker.  The Clerk of the Court is directed to CLOSE this action.

13

IT IS SO ORDERED.

14

15  Dated:  __**July 18, 2014**__

                           UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28